IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION
E-FILED
Friday, 06 January, 2012  01:43:20 PM
Clerk, U.S. District Court, ILCD

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-CR-30068 |
| | ) | |
| ANTHONY M. LYONS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Anthony M. Lyon's Motion to Suppress Evidence Obtained During a Warrantless Search and Quash the Arrest That Followed (d/e 11) (Motion). The Motion is fully briefed, and the District Judge has referred the matter for an evidentiary hearing and Report and Recommendation. This Court conducted the evidentiary hearing on January 4, 2012. The Defendant appeared personally and by his counsel Mark Kevin Wykoff, Sr. The Government appeared by Assistant United States Attorney Jason M. Bohm. Springfield, Illinois, Police Officers Andrew Dodd and Ricky Burns testified at the hearing. After carefully considering all of the submissions of the parties and the evidence

presented, and pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that the Motion be DENIED.

I. BACKGROUND[1]

On Wednesday September 14, 2011, Officers Dodd and Burns, along with Springfield Police Officers Leach and Redpath, were patrolling near the intersection of Second and Edwards Street in Springfield, Illinois. The four officers were part of the Springfield Police Department's Street Crimes Unit. The four officers were riding together in one automobile. Officer Dodd described the vehicle as "inconspicuously marked." The vehicle was not a marked squad car but could be identified as a law enforcement vehicle. The officers were not in uniform, but were wearing vests that had the word "Police" printed across the front. The officers also were wearing their badges on the front of the vests.

At 9:01 p.m., the officers saw a blue Cadillac automobile heading east on Edwards Street.[2] The officers identified the driver of the Cadillac as James White. Lyons was in the front passenger seat of the Cadillac. The officers knew that in February 2011, White fled from an officer that was

---

[1]This Report and Recommendation is prepared without the benefit of a transcript.

[2]Officer Burns initially testified that he did not know the exact time when the events began. Officer Burns was provided his written report of the incident to refresh his recollection as to the timing. Upon reviewing the report, Officer Burns testified that his recollection was refreshed, and the event began at 9:01 p.m. Officer Burns' report was not admitted into evidence.

attempting to conduct a traffic stop.  White's flight ended when he crashed his vehicle.  A firearm was found in White's crashed vehicle.  The officers further knew that in May 2011, police officers executed a search warrant at White's home in Springfield, Illinois, and found crack cocaine and firearms.  The officers further knew that White's drivers license was suspended.

The officers followed the blue Cadillac as White turned left on Second Street, drove north two blocks and turned right on Capitol Avenue.  The officers then activated their emergency lights on to conduct a traffic stop for driving while White's license was suspended.  White did not initially stop, but drove through a red light at the intersection Capitol Avenue and Fourth Street.  White then stopped east of the intersection of Capitol and Fourth.  The officers did not observe White or Lyons make any furtive movements inside the Cadillac before the vehicle came to a stop.

Officers Dodd and Redpath approached the driver's side of the Cadillac.  Upon the officers' direction, White exited the vehicle.  Officer Burns approached the passenger side of the vehicle to speak to Lyons.  Officer Burns did not know Lyons.  Officer Burns observed that Lyons seemed nervous.  Lyons' hands were shaking and he was looking down and avoiding eye contact with Officer Burns.  Officer Burns asked Lyons to exit the vehicle, and Lyons complied.  Officer Burns asked Lyons if he had any weapons or drugs on his person.  Lyons said no.  Officer Burns said

that he was going to conduct a pat down search of Lyons as a matter of officer safety. Lyons then hung his head and said that he had a gun on him. Officer Burns knew that carrying a concealed weapon in a vehicle was a crime.

Officer Burns took out his handcuffs, put Lyons hands behind Lyon's head, and glanced at Officer Dodd. Officer Dodd saw Officer Burns take out his hand cuffs and went to assist Officers Burns. When Officer Dodd got to the passenger side of the Cadillac, Officer Burns told him that Lyons had a gun. Officer Burns lifted Lyons' shirt and removed a hand gun that was tucked in the waist band of Lyons' pants. Lyons was then arrested.

White was given a citation for driving while his license was suspended, but was not arrested. Officer Burns testified that a person can be arrested for driving while his license is suspended. White also was not given a citation for driving through a red light.

Defense counsel asked Officer Burns to estimate the time that elapsed during the event. Officer Burns estimated that five to ten minutes elapsed from the time that the event began at 9:01 p.m, until Officer Dodd removed the weapon from Lyons' person. Officer Burns previously testified that he did not know the time that elapsed from the moment he started talking to Lyons until Officer Dodd removed the gun from Lyons' person. The parties stipulated that at 9:18 p.m., one of the officers made a

telephone call to secure a LEADS report on the serial number of the firearm taken from Lyons' person (LEADS Call). Officer Burns did not make the call and did not know which officer made the call.

ANALYSIS

Lyons moves to suppress the weapon found on his person and quash his arrest. Lyons argues that the officers violated his Fourth Amendment rights by conducting an search of his person. He argues that the weapon should therefore be suppressed. Lyons does not challenge the validity of the traffic stop.[3] He only challenges the officers' conduct directed toward him after the stop. He argues that the evidence found as a result of the search should be suppressed and the arrest should be quashed.

The Fourth Amendment protects individuals from unreasonable searches and seizures. Generally, searches and seizures must be conducted pursuant to a warrant issued by a neutral magistrate upon on a showing of probable cause. Illinois v. McArthur, 531 U.S. 326, 330 (2001). Law enforcement officers, however, can conduct reasonable searches and seizures without a warrant if the facts and circumstances fit certain

---

[3]Lyons also agrees that Officer Burns could properly direct Lyons to exit the vehicle at the traffic stop. See Motion, at 4 ("During a valid traffic stop, an officer may order the driver and passengers out of the vehicle without violating the Fourth Amendment. Pennsylvania v. Mimms, 434 U.S. 106, 112 n.6 . . . (1977); Maryland v. Whilson, 519 U.S. 412 . . . (1997).").

recognized exceptions to the warrant requirement.  See Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 1716 (2009).

One established exception to the warrant requirement provides that an officer may arrest a person without a warrant when the officer has probable cause to believe the individual is committing a crime, and may search the individual incident to that arrest.  Draper v. United States, 358 U.S. 307, 310-11 (1959).  In this case, the officers had probable cause to believe Lyons was committing a crime when he told Officer Lyons that he had a gun on his person.  Carrying a concealed weapon in a vehicle is a crime in Illinois.  720 ILCS 5/24-1(a)(4).  At that point, the officers had probable cause to arrest Lyons and could search him incident to that arrest.

Lyons argues that Officer Burns commenced the pat down search before Lyons stated that he had a gun.  This assertion is factually incorrect. Officer Burns testified that he did not touch Lyons until after Lyons stated that he had a gun.  Even then, Officer Burns did not search Lyons, but, rather, placed Lyons' hands behind his Lyons' head.  Office Dodd conducted the search and removed the gun from Lyons' waist band. Officer Burns never conducted a pat down search.

Lyons argues, alternatively, that the Officer Burns improperly coerced Lyons into admitting that he had a gun.  Lyons argues that Officer Burns'

statement that he was going to pat down Lyons was unjustified. The Government responds that Officer Burns was entitled to pat down Lyons under the facts and circumstances that existed at the time. If so, Officer Burn's factually accurate statement that he was going to take a lawful investigative action is not coercive. United States v. Alexander, 573 F.3d 465, 478 (7th Cir. 2009). The issue, therefore, is whether a pat down search would have been a lawful investigative action at that moment. Under the totality of the circumstances that existed at that moment, Officer Burns was entitled to conduct at pat down search of Lyons for officer safety.

An officer may stop an individual and investigate if the officer has a reasonable articulable suspicion that illegal activity may be afoot. Terry v. Ohio, 392 US. 1, 21 (1968). The stop and investigation must be reasonable under the circumstances. If, under the circumstances, the officer has a reasonable basis to believe that the individual may be armed, the officer may take reasonable steps to protect himself and may conduct a pat down search of the exterior of the individual's clothing to determine whether the individual is armed. Id., at 27. Whether the officer has a reasonable suspicion to support such a pat down search "is a fact-specific inquiry that looks at the totality of the circumstances." United States v. Robinson, 615 F.3d 804, 807-08 (7th Cir. 2010). The Court considers "the

circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." United States v. Lawshea, 461 F.3d 857, 859 (7th Cir. 2006).

In this case, Officer Burns had a reasonable suspicion Lyons may have been armed. Officer Burns knew that within last seven months White had been found with guns and drugs in his home and with a gun in his vehicle. Officer Burns knew that White did not stop initially when the officer turned on the emergency lights to pull him over. Rather, White ran a red light before pulling over. Officer Burns knew from his experience that occupants of vehicles often flee from a traffic stop because they have weapons or drugs in the vehicle. Based on these factors, Officer Burns had a reasonable basis to suspect that there was a weapon in White's car when he approached Lyons sitting in the passenger seat. Then, in addition, Lyons appeared nervous when talking to Burns. Given Lyons' nervousness and the reasonable risk that a weapon was somewhere in the gun, Officer Burns had a reasonable articulable suspicion to justify a limited pat down to protect himself and the other officers from the risk of being shot and killed.

Lyons argues that the only facts and circumstances to be considered are those that are specific to him alone. He argues that the only fact specific to Lyons was his nervousness, and nervousness alone is not

sufficient to justify a pat down search. United States v. Massenburg, 654 F.3d 480, 489 (4th Cir. 2011); United States v. Spinner, 475 F.3d 356 (D.C. Cir. 2007); United States v. Mesa, 62 F.3d 159, 162 (6th Cir. 1995) abrogated on other grounds, United States v. Burton, 334 F.3d 514, 517 (6th Cir. 2003). These cases do not apply in this situation because Lyons' nervousness was not the only relevant factor. Officer Burns could consider the fact that Lyons was a passenger in White's car and the circumstances supported a reasonable suspicion that there was a weapon in that car. White initially tried to flee when the officers turned on the emergency lights, and in Officer Burns experience, drivers often attempt to flee because they have weapons or drugs. Officer Burns further knew that in February 2011, White had a gun in his car when he fled when officers who tried to pull him over for a traffic stop. Those facts supported a reasonable suspicion that there may be a gun in White's car and a reasonable need for the officers to protect themselves from the possibility that an occupant in that car might use that weapon, especially a nervous occupant such as Lyons. The cases cited by Lyons that discuss searches based on nervousness alone do not apply here.

Lyons also argues that the timing of the events somehow shows that the search was improper. Lyons argues that he was detained for seventeen minutes before the gun was removed from his person. He

bases this argument on Officer Burns' testimony that the event began at 9:01 p.m. and the stipulation that the LEADS Call was made at 9:18 p.m. He argues that seventeen minutes was too long to wait to conduct a pat down search for officer safety; he argues that Officer Burns would have patted Lyons down immediately if he truly believed he needed to conduct such a search to protect himself. Lyons argues that Officer Dodd and Burns testimony was not credible, that in fact, the officers detained Lyons for seventeen minutes before conducting the search. Lyons further argues that the seventeen minute detention was unreasonable and that the detention was an illegal seizure of Lyons at the time that the search was conducted rather than an investigative stop.

 Lyons' timing argument is sheer speculation. The timing of the LEADS Call does not establish that the officers waited seventeen minutes before searching Lyons. The evidence indicates that the event began at 9:01 p.m. and the LEADS Call occurred at 9:18 p.m. No evidence indicates the time that elapsed from the discovery of the gun to the time of the LEADS Call. Officer Burns estimated that Officer Dodd removed the gun from Lyons' person five to ten minutes after the event began; however, Officer Burns also testified that he did not know the amount of time that elapsed from the moment he reached the passenger side of the car until Officer Dodd recovered the weapon from Lyons' person. Based on all of

Officer Burns' testimony, the five to ten minute estimate was a rough estimate. The Court finds that Officer Burns' rough estimate of the timing is consistent with the rest of his testimony and with Officer Dodd's testimony. The Court further finds that the officers were credible and that the traffic stop was a proper investigative stop and not an illegal detention when Lyons voluntarily stated that he had a gun on his person. See United States v. Sharp, 470 U.S. 674, 686-87 (1985).

Based on the totality of the circumstances, Officer Burns had a reasonable articulable suspicion that Lyons might be armed and posed a threat to officer safety. Officer Burns' statement that he was going to conduct a pat down search, thus, was not coercive because it was a factually accurate statement that he was going to take a lawful investigative action. United States v. Alexander, 573 F.3d 465, 478 (7th Cir. 2009). Lyons' statement that he had a gun, therefore, was not coerced. Based on Lyons' statement, the officers had probable cause to arrest Lyons without a warrant and to search him incident to arrest.

WHEREFORE, this Court recommends that Defendant Anthony M. Lyon's Motion to Suppress Evidence Obtained During a Warrantless Search and Quash the Arrest That Followed (d/e 11) should be DENIED. The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within

fourteen days after being served with ECF copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986); Local Rule 72.2.

ENTER: January 6, 2012

                                           *s/ Byron G. Cudmore*
                                         BYRON G. CUDMORE
                             UNITED STATES MAGISTRATE JUDGE