IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-cr-30068 |
| | ) | |
| ANTHONY M. LYONS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter is before the Court on the Report and Recommendation (d/e 15) entered by United States Magistrate Judge Byron G. Cudmore on January 6, 2012. Defendant Anthony M. Lyons filed an Objection to the Report and Recommendation (d/e 16) ("Objections") on January 20, 2012. See 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). The Government filed a Response to Defendant's Objections (d/e 19) on February 15, 2012.

In the Report and Recommendation, the Magistrate Judge recommends that this Court deny Defendant's Motion to Suppress Evidence Obtained During a Warrantless Search and Quash the Arrest That Followed (d/e 11) ("Motion").  This Court reviews <u>de</u> <u>novo</u> any part of the Report and Recommendation to which there has been a proper objection.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  For the reasons set forth below, the Court overrules Defendant's Objections and adopts the Magistrate Judge's Report and Recommendation.

While this Court adopts the Magistrate Judge's conclusion that officers lawfully seized the evidence from Defendant, this Court respectfully declines to adopt a portion of the underlying analysis in the Report and Recommendation.  Specifically, this Court declines to adopt the Magistrate Judge's conclusion that the officers never commenced a pat-down search of Defendant.  <u>See</u> R&R at 6.  However, this Court adopts the Magistrate Judge's conclusion that Defendant's Motion to Suppress must be denied because this Court finds that whether the officers obtained the gun as a result of a <u>Terry</u> pat-down search of

Defendant or as a result of a search incident to Defendant's arrest, the officers' search of Defendant and seizure of the gun was lawful.

## BACKGROUND

A.    Facts

This Court has independently reviewed the facts as set out in the Indictment (d/e 2), the pleadings, and the official transcript of the January 4, 2012 evidentiary hearing on Defendant's Motion held before the Magistrate Judge.  The relevant facts are as follows.

On the night of September 14, 2011, Officers Dodd, Leech, Burns, and Redpath of the Springfield Police Department (SPD) Street Crimes Unit were patrolling near the corner of Second and Edwards Streets in Springfield, Illinois.  Officer Dodd testified that the officers' vehicle was an "inconspicuously marked" vehicle that was not marked as a squad car but could be identified as a law enforcement vehicle.

At 9:01 p.m., the officers saw a blue Cadillac automobile ("Cadillac") driving east on Edwards.[1]  Officer Leech, who was driving,

_____

[1] At the evidentiary hearing, Officer Burns initially could not remember exactly what time the officer first saw the Cadillac.  Officer Burns was then provided his written report of the September 14, 2011 incident to refresh his recollection as to the timing.  After reviewing his

viewed the driver of the Cadillac and reported to the other officers that he recognized the driver to be James White ("White"). Defendant was seated in the passenger seat of the Cadillac.

The officers knew White from prior encounters. In February 2011, White fled from Officer Dodd and another officer after they had attempted to initiate a traffic stop of White's vehicle. White proceeded to crash his vehicle at the corner of Ninth and Edwards Streets, and officers found a gun inside the vehicle. Officer Burns testified that although he was not involved in the February 2011 chase, he was aware of it. The officers were also familiar with White because, in May 2011, Officer Dodd and a sergeant of the SPD Street Crimes Unit obtained and executed a search warrant for White's residence and found two guns and approximately one ounce of crack cocaine in the residence. Officer Dodd testified that when he and the sergeant had attempted to execute the search warrant on White's residence, White had initially barricaded the front door of the residence with his body. Officer Dodd and the sergeant

---

report, Officer Burns testified that the officers first saw the Cadillac at 9:01 p.m. Officer Burns' report was not admitted into evidence.

eventually forced the door open. Officer Burns testified that he did not participate in executing the May 2011 search warrant but was aware of the May 2011 search and was aware that officers had found guns and crack cocaine in White's residence on that occasion. Officer Dodd further testified that he and other officers had seen White "numerous times" in the past due to traffic stops on White's vehicle, including traffic stops on White's blue Cadillac.

Officer Burns testified that he did not know Defendant prior to the September 14, 2011 incident. However, Officer Dodd testified that he knew Defendant before that night because he had seen Defendant with White "on numerous occasions in different areas," including in front of White's residence.

When the officers saw White driving the Cadillac on the night of September 14, 2011, the officers knew that White's driving license was suspended. The officers followed the Cadillac as it turned left from Edwards Street onto Second Street and drove north two blocks. At the corner of Second and Capitol, Officer Leech activated the emergency

lights on the officers' vehicle to conduct a traffic stop for White's driving with a suspended license. White did not initially stop. White continued to drive his vehicle east on Capitol Street and drove through a "solid red light" at Fourth and Capitol. White then pulled over on Capitol about halfway between Fourth and Fifth Streets.

When the Cadillac came to a stop, Officers Dodd and Redpath walked to the driver's side of the Cadillac, Officer Burns walked to the passenger's side, and Officer Leech stayed in the patrol vehicle. Officers Dodd and Redpath spoke with White and asked White to step out of the vehicle. Officer Redpath then searched White.

When Officer Burns reached the passenger side of the vehicle, he noticed that Defendant's hands were shaking. Officer Burns testified that while he was speaking to Defendant, Defendant was "kind of glancing at me, not looking directly at me while speaking to me." This behavior indicated to Officer Burns that Defendant was nervous. Officer Burns then asked Defendant to step out of the vehicle. When Defendant exited the vehicle, Officer Burns noticed that Defendant still appeared

nervous and his hands were still shaking. Officer Burns asked Defendant if he had any weapons on him, and Defendant answered no. At that time, Officer Burns informed Defendant that he was going to "pat him down for weapons." Officer Burns testified that after he told Defendant he was going to pat him down, Defendant "kind of put his head down and said, I have a gun on me." At that point, Officer Burns had not yet placed his hands on Defendant.

Officer Burns knew that carrying a concealed weapon in a vehicle was a crime. After Defendant said he had a gun, Officer Burns took out his handcuffs and put Defendant's hands behind his back. Officer Dodd made eye contact with Officer Burns and saw that Officer Burns had reached for his handcuffs. Recognizing that Officer Burns likely needed assistance, Officer Dodd walked over to Officer Burns. When Officer Dodd reached Officer Burns, Officer Burns communicated to Officer Dodd that Defendant had a weapon on his person. Officer Dodd then lifted up Defendant's shirt and removed a loaded firearm from Defendant's waistband. Officer Dodd took the firearm back to the patrol

car, and Officer Burns secured Defendant. White was given a citation for driving while his license was suspended, but he was not arrested. White was not given a citation for driving through a red light.

At the evidentiary hearing, defense counsel asked Officer Burns to estimate the time that had elapsed during the entire stop. Officer Burns estimated that five to ten minutes had elapsed from 9:01 p.m., the time when the officers first saw White's Cadillac, until the time that Officer Dodd removed the weapon from Defendant's person. Officer Burns testified that he did not know how much time had elapsed from the moment he began speaking with Defendant to the moment Officer Dodd removed the gun from Defendant's person. The Parties stipulated that at 9:18 p.m., one of the officers made a telephone call to obtain a LEADS report on the serial number of the gun taken from Defendant.

On October 6, 2011, Defendant was charged by Indictment with possession of a firearm, having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1).

B.    <u>Defendant's Motion to Suppress</u>

On December 21, 2011, Defendant filed the Motion to Suppress. <u>See</u> d/e 11.  In the Motion, Defendant moved to suppress the firearm found on his person and quash his arrest.  Defendant contended that officers violated his Fourth Amendment rights by conducting a warrantless search of his person without a reasonable, articulable suspicion that Defendant posed a threat to officer safety.  Defendant argued that both his statement that he had a gun and the gun seized as a result of the unlawful search of his person must be suppressed.

C.    <u>The Government's Response</u>

The Government filed a response in opposition to Defendant's Motion on December 22, 2011, arguing that officers lawfully seized the gun from Defendant's person during a search incident to a lawful arrest. On January 4, 2012, an evidentiary hearing on Defendant's Motion was conducted before the Magistrate Judge.

**D. The Report and Recommendation Denying Defendant's Motion and Defendant's Objections Thereto**

In the Report and Recommendation, the Magistrate Judge recommends that this Court deny Defendant's Motion. After careful consideration of the testimony presented at the evidentiary hearing, the Magistrate Judge concluded that Officer Burns lawfully seized Defendant's gun during a search incident to Defendant's arrest. The Magistrate Judge found that once Defendant stated he had a gun on his person, Officer Burns had probable cause to arrest Defendant for the crime of carrying a concealed weapon on his person (see 720 ILCS 5/24-1(a)(4)) and could lawfully search Defendant incident to that arrest. The Magistrate Judge found that Officer Burns never conducted a Terry pat-down search of Defendant because Officer Burns did not touch Defendant until after Officer Burns had probable cause to arrest Defendant—the subsequent seizure of the gun from Defendant's waistband was part of a search incident to the arrest. The Magistrate Judge further found that Officer Burns did not improperly coerce Defendant into admitting that he had a gun.

The Magistrate Judge also found that even if the officers had decided to conduct a pat-down search of Defendant, they would have been entitled to do so because, considering the totality of the circumstances, Officer Burns had a reasonable, articulable suspicion that Defendant might be armed and dangerous. Finally, the Magistrate Judge found that the timing of the events did not suggest that reasonable suspicion was absent or that the search was improper in any other way.

On January 20, 2012, Defendant filed his Objections to the Report and Recommendation. See d/e 16. In his Objections, Defendant disputes several of the findings in the Report and Recommendation and argues the following:

(1) Defendant contends that Officer Burns did not have a reasonable, articulable suspicion that Defendant posed a threat to officer safety. Specifically, Defendant argues that the Report and Recommendation erroneously concludes that White was a menace to society and incorrectly imputes White's individualized characteristics to Defendant in its conclusion that the officers had a reasonable, articulable

suspicion that Defendant was armed and dangerous.

(2) Defendant contends that the timing of events further shows that officers did not have reasonable suspicion that Defendant posed a threat to officer safety.

(3) Defendant contends that the Report and Recommendation erroneously categorizes the search of Defendant as a search incident to arrest when the search was actually a <u>Terry</u> pat-down.  Defendant contends that a pat-down search commenced when Officer Burns admonished Defendant that Burns was going to pat him down, before Defendant had stated he had a gun on his person.  Therefore, Defendant's subsequent statement that he had a gun and the seizure of the gun are fruits of the unlawful pat-down.

(4) Defendant alleges that "material inconsistencies and errors" in the Report and Recommendation warrant a hearing <u>de</u> <u>novo</u>.

<u>ANALYSIS</u>

The Fourth Amendment protects individuals from unreasonable searches and seizures.  <u>See</u> U.S. Const., Amdt. 4.  The "central

requirement" of the Fourth Amendment is one of reasonableness.

Illinois v. McArthur, 531 U.S. 326, 330 (2001) (citing Texas v. Brown, 460 U.S. 730 (1983)). The general rule is that searches and seizures are unreasonable unless conducted pursuant to a judicial warrant issued by a neutral magistrate after finding probable cause. McArthur, 531 U.S. at 330 (2001). However, courts have established exceptions to the warrant requirement. One established exception is that an officer may lawfully arrest an individual without a warrant when the officer has probable cause to believe that the individual is committing a crime. United States v. Sawyer, 224 F.3d 675, 678 (7th Cir. 2000). When making such a lawful arrest, an officer is entitled to conduct a full search of the individual without having to provide any additional justification. Virginia v. Moore, 553 U.S. 164, 176-77 (2008) (citing United States v. Robinson, 414 U.S. 218, 235 (1973)).

Another recognized exception to the warrant requirement is that an officer may stop and investigate an individual if the officer has a reasonable, articulable suspicion that the individual may be engaged in

illegal activity.  <u>Terry v. Ohio</u>, 392 U.S. 1, 21(1968).  If, after stopping

the individual, the officer has a reasonable basis to believe the individual

may be armed or dangerous, the officer may take reasonable steps to

protect himself.  <u>Id.</u> at 27.  Specifically, the officer may conduct a non-

invasive pat-down search of the person to determine whether the

individual is armed.  <u>Id.</u>  Whether the officer had a reasonable,

articulable suspicion to support a <u>Terry</u> frisk is a "fact-specific inquiry

that looks at the totality of the circumstances in light of common sense

and practicality."  <u>United States v. Robinson</u>, 615 F.3d 804, 807-08 (7th

Cir. 2010) (internal quotation marks omitted).  In making this

determination, a court should consider "the totality of the circumstances

known to the officer at the time of the stop, including the experience of

the officer and the behavior and characteristics of the suspect."  <u>United

States v. Lawshea</u>, 461 F.3d 857, 859 (7th Cir. 2006).

In his Objections, Defendant argues the officers seized the gun from

his person not during a search incident to arrest but rather as the result

of an improper <u>Terry</u> pat-down conducted absent reasonable, articulable

suspicion that Defendant was armed and dangerous. Defendant does not dispute that he was lawfully seized as part of the traffic stop. Defendant also does not dispute that, during a valid traffic stop, officers may lawfully order the driver and passengers to exit the vehicle without violating Fourth Amendment rights. See Def.'s Mot. at 4-5 (citing Pennsylvania v. Mimms, 434 U.S. 106, 112 n.6 (1977); Maryland v. Wilson, 519 U.S. 408, 412 (1997)). However, Defendant argues that an unlawful pat-down commenced when Officer Burns stated to Defendant that he was going to "pat [him] down." See Def.'s Objections at 8-9. Defendant contends that the pat-down was unlawful because, at that time, Officer Burns did not have reasonable, articulable suspicion to justify a Terry pat-down. Officer Burns also did not have probable cause to arrest because Defendant had not yet stated he had a gun on his person. Therefore, Defendant argues, both Defendant's statement that he had a gun and the subsequent discovery of the gun on his person were the product of the unlawful pat-down and must be suppressed.

By contrast, the Government argues that no pat-down ever occurred and that, instead, officers obtained the gun as a result of a search incident to a lawful arrest.  Specifically, the Government argues that once Defendant informed Officer Burns that he had a concealed firearm on his person, Officer Burns had probable cause to arrest Defendant and search him incident to the arrest, because carrying a concealed weapon in a vehicle is a crime in Illinois.  <u>See</u> 720 ILCS 5/24-1(a)(4).  The Government contends that Officer Burns' verbal admonishment that he was going to pat down Defendant did not initiate a pat-down because Officer Burns had not yet made any physical contact with Defendant. Officer Burns only laid hands on Defendant after Officer Burns had probable cause to arrest Defendant based on Defendant's statement that he had a concealed weapon on his person.

Because this Court agrees with the Magistrate Judge that Officer Burns had reasonable, articulable suspicion that Defendant may have been armed and dangerous sufficient to justify a <u>Terry</u> frisk at the time that Officer Burns ordered Defendant to exit the vehicle, this Court need

not decide whether officers ultimately obtained Defendant's gun as a result of a <u>Terry</u> frisk or as a result of a search incident to an arrest.[2]  If a pat-down search did not commence with Officer Burns' statement that he was going to pat down Defendant, then the gun was seized lawfully during a search incident to an arrest.  If a pat-down had commenced when Officer Burns stated he was going to pat down Defendant, it was a lawful pat-down because Officer Burns had a reasonable, articulable suspicion that Defendant was a threat to officer safety.  Whether the gun was obtained through a <u>Terry</u> frisk or a search incident to an arrest, the gun was lawfully seized.

---

[2] Therefore, this Court need not decide the question of exactly when a <u>Terry</u> frisk commences.  This Court notes that in <u>United States v. Snow</u>, the Seventh Circuit assumed, without holding, that the <u>Terry</u> frisk at issue commenced when the police officer ordered the defendant to step out of his truck and place his hands on the vehicle so that he could be patted down, even though the officer had not yet touched the defendant.  656 F.3d 498, 500 n.1 (7th Cir. 2011).  However, in an earlier case, the Seventh Circuit assumed that the <u>Terry</u> frisk at issue did not begin until the police officer actually placed his hands on the defendant.  <u>See</u> <u>United States v. Tinnie</u>, 629 F.3d 749, 753 n.3 (7th Cir. 2011) (2-1 decision).  In his dissenting opinion in <u>Tinnie</u>, Judge Hamilton took the opposite position and argued the pat-down had already commenced before the officer had touched defendant.  <u>Id.</u> at 759 (Hamilton, J., dissenting).  Judge Hamilton argued that to determine when a <u>Terry</u> frisk commences, a court should determine "at what point in time a reasonable person in [the defendant]'s position would have thought that the officer's actions were part of the process of conducting a frisk."  <u>Id.</u>

**A.** **Officer Burns Had a Reasonable, Articulable Suspicion that Defendant May Have Been Armed and, Therefore, Had Lawful Grounds to Conduct a Terry Pat-Down Search of Defendant.**

Defendant contends that the Report and Recommendation erred in concluding that officers had a reasonable, articulable suspicion that Defendant may have been armed and dangerous sufficient to justify a Terry pat-down search of Defendant because (1) the only Defendant-specific articulable facts supporting the belief that Defendant was a threat to officer safety was the fact that Defendant appeared nervous and did not look at Officer Burns, but nervous behavior, standing alone, is not enough to justify a Terry frisk; and (2) the Report and Recommendation erroneously imputes White's characteristics and history to Defendant.

Defendant is correct that while nervousness may be considered as a factor in the totality of circumstances (see United States v. Brown, 188 F.3d 860, 865 (7th Cir. 1999)), nervous behavior, standing alone, is not sufficient to justify a Terry search. See United States v. Massenburg, 654 F.3d 480, 489 (4th Cir. 2011); United States v. Spinner, 475 F.3d 356, 359 (D.C. Cir. 2007); United States v. Mesa, 62 F.3d 159, 162 (6th Cir.

1995), abrogated on other grounds by United States v. Burton, 334 F.3d 514, 517 (6th Cir. 2003). Courts have consistently stated that nervousness is "of limited value in assessing reasonable suspicion." United States v. Simpson, 609 F.3d 1140, 1147 (10th Cir. 2010); see also United States v. Richardson, 385 F.3d 625, 630-31 (6th Cir. 2004) (noting that nervousness is "especially" tenuous support for a frisk made in the context of a traffic stop).

However, Defendant's nervous behavior was only one of a number of other factors supporting reasonable suspicion in this case. Whether an officer has a reasonable suspicion to support a Terry pat-down search is a "fact-specific inquiry that looks at the totality of the circumstances." Robinson, 615 F.3d 807-08. While "certain behavior in isolation may have an innocent explanation . . . that same behavior may give rise to reasonable suspicion when viewed in the context of other factors at play." Lawshea, 41 F.3d at 859. Furthermore, an officer need not be certain that the suspect is armed, as long as the officer has a reasonable belief that his safety or the safety of others is at risk. Terry, 392 U.S. at 27.

Here, at least three factors in addition to Defendant's nervous behavior supported a reasonable suspicion that Defendant may have posed a threat to officer safety.

First, when Officer Burns approached Defendant on the passenger side of White's vehicle, Officer Burns knew that Defendant was a passenger in a vehicle that had attempted to flee a traffic stop just a few minutes earlier, driving through a red light in its flight from the officers. Officers Dodd and Burns both testified that in their experiences, drivers often attempt to flee from police because they have weapons or drugs in the vehicle. The Seventh Circuit has held that evasive action and refusing to stop may "fuel[] suspicions" of criminal activity. United States v. Weaver, 8 F.3d 1240, 1244 (7th Cir. 1993). Further, Officer Burns knew that White was driving the vehicle while his license was suspended.

Second, when Officer Burns approached Defendant, he knew that, in February 2011, White had attempted to flee from police officers when they tried to initiate a traffic stop on White's vehicle. On that occasion,

after White ended his flight by crashing his vehicle, officers found a firearm in White's vehicle.

Third, Officer Burns knew that other officers had previously executed a search warrant at White's residence in May 2011, after White had again attempted to flee from officers by barricading the front door to his residence. Officer Burns knew that while executing the search warrant, officers found crack cocaine and firearms in White's residence.

Considering the vehicle's attempt to flee from the traffic stop and White's history of flight from police and prior possession of firearms and crack cocaine, Officer Burns had a reasonable, articulable suspicion that Defendant, an occupant in White's vehicle, may have been armed and dangerous when he approached Defendant on the night of September 14, 2011. The fact that Defendant appeared to Officer Burns to be nervous, with shaking hands, was an added factor in establishing reasonable, articulable suspicion. See United States v. Brown, 188 F.3d 860, 865 (7th Cir. 1999) ("Nervousness or refusal to make eye contact alone will not justify a Terry stop and pat down . . . but such behavior may be

considered as a factor in the totality of circumstances."); <u>see also</u> <u>United States v. Oglesby</u>, 597 F.3d 891, 895 (7th Cir. 2010) (finding reasonable suspicion where the encounter occurred at night and the suspect looked from side to side and acted in an evasive manner).

Defendant argues that the Report and Recommendation erroneously imputes White's history on Defendant in its determination that the officers had reasonable suspicion. While White's history of encounters with police officers was certainly more relevant to assessing White's dangerousness, the officers were permitted to consider it when determining whether Defendant posed a threat to officer safety due to Defendant's association with White. An individual's criminal association "is a permissible component of the articulable suspicion required for a <u>Terry</u> stop." <u>United States v. Feliciano</u>, 45 F.3d 1070, 1074 (7th Cir. 1995). Moreover, "[t]he Supreme Court has explained that traffic stops of automobiles pose a danger to police officers and that the danger is heightened by the presence of passengers." <u>United States v. Lansdowne</u>, 296 Fed. Appx. 268, 269 (3d Cir. 2008) (citing <u>Maryland v. Wilson</u>, 519

U.S. 408 (1997)).  The Supreme Court has noted that "'[t]he motivation of a passenger to employ violence to prevent apprehension of such a crime . . . is every bit as great as that of the driver.'"  Arizona v. Johnson, 555 U.S. 323, 331-32 (2009) (quoting Wilson, 519 U.S. at 414).

Defendant cites Ybarra v. Illinois, 444 U.S. 85, 91 (1979) for the proposition that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."  Ybarra is distinguishable from this case.  In Ybarra, police officers searched a bar patron during the execution of a search warrant that authorized the search of a tavern and the bartender for heroin possession.  Id.  The Court held that the search of a bar patron, who had no particular relationship with the bartender or the bar, was unconstitutional because the search warrant "gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers."  Id. at 92.  By contrast, the relationship between a driver and a passenger is a closer relationship than the one between a bartender and a bar customer.  See Wyoming v.

Houghton, 526 U.S. 295, 304-05 (1999) ("[A] car passenger—unlike the unwitting tavern patron in Ybarra—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing."); see also Landsdowne, 296 Fed. Appx. at 270 (finding a pat-down search of the defendant was based on "more than a mere propinquity" to other individuals in the car in part because the defendant, unlike the defendant in Ybarra, "was not in a public establishment when he was searched; he was a passenger in a private car that was stopped pursuant to a legitimate traffic stop."); People v. Allen, 645 N.E.2d 263, 284-85 (Ill. App. 1994) ("[I]t is much more likely a car passenger is a companion to the driver, and perhaps involved in the driver's criminal behavior, than the public customer in the tavern in Ybarra.").

Here, it was not unreasonable for officers to suspect that Defendant might be armed and dangerous where he was a passenger in a car that had just attempted to flee from a traffic stop and where the driver of that car had previously fled from officers with a gun in his car and had

previously been found to have guns and crack cocaine in his residence. Because Officer Burns had reasonable, articulable suspicion that Defendant may have been armed and dangerous, Officer Burns would have been entitled to conduct a <u>Terry</u> pat-down of Defendant for officer safety, even before Defendant stated that he had a gun on his person. Therefore, the officers' subsequent seizure of the gun was lawful, whether it was obtained as a result of a <u>Terry</u> pat-down search or a search incident to an arrest supported by probable cause.

B.  <u>The Timing of Events Does Not Establish that Officers Lacked Reasonable Suspicion or that Officers' Seizure of Defendant Was Improper in Any Other Way.</u>

In his Objections, Defendant states that testimony at the evidentiary hearing established that there was a delay of "five to ten, or upwards of seventeen minutes" between the time when Defendant was ordered to exit the vehicle and the time when Officer Burns stated he was going to pat down Defendant.  Defendant states that, in the interim, Officer Burns spoke with Defendant and nothing in that conversation triggered heightened suspicion.  Defendant contends that the timing of

events—specifically, the fact that between 5 to 17 minutes elapsed between when Defendant exited the vehicle and when Officer Burns told him he would pat him down—indicates that Defendant did not pose a real threat to officer safety and that the officers lacked a reasonable, articulable suspicion to pat him down.  If Defendant had posed a real threat to officer safety, Defendant argues, Defendant would have been searched immediately after he exited the vehicle.

The facts presented do not actually establish that 17 minutes passed between when Defendant exited the vehicle and when Officer Burns told him he would pat him down.  Officer Burns testified, after refreshing his recollection by viewing his report from the incident, that the officers saw White's car for the first time at 9:01 p.m.  The Parties stipulated that by 9:18 p.m., an officer had entered the serial number on Defendant's seized firearm into LEADS.  These facts indicate that approximately 17 minutes elapsed between the time that the officers first saw White's vehicle and the time that officers entered the serial number on the seized firearm into LEADS.  The time that elapsed between when

Defendant exited from the vehicle and when Officer Burns stated he would pat down Defendant is unclear and is not established by the testimony. Officer Burns estimated that five to ten minutes elapsed from the time that the event began at 9:01 p.m. until the time that Officer Dodd removed the weapon from Defendant's person. Officer Burns also testified that he did not know exactly how much time elapsed from the moment he began speaking with Defendant until the moment Officer Dodd removed the gun from Defendant's person.

As this Court has already found, the officers had a reasonable, articulable suspicion that Defendant may have been armed and dangerous when the officers approached White's vehicle. Based on the evidence presented and the totality of the circumstances, the timing of the events does not establish the absence of a reasonable, articulable suspicion that Defendant posed a threat to officer safety.

Defendant additionally contends that the alleged 17-minute detention was unreasonable and was an illegal seizure of Defendant rather than an investigative stop. This Court notes that "a seizure that is

lawful at its inception can violate the Fourth Amendment if its manner of

execution unreasonable infringes interests protected by the

Constitution." <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005). For

example, a seizure can become unlawful "if it is prolonged beyond the

time reasonably required" to complete the traffic stop. <u>Id.</u>

In this case, Defendant has conceded that the officers had lawfully

stopped White's vehicle for driving with a suspended license. Because

the officers were conducting a valid traffic stop, Officer Burns was

entitled to order Defendant out of the vehicle in the interest of officer

safety without violating the Fourth Amendment. <u>See</u> <u>Wilson</u>, 519 U.S.

at 412. Officer Burns was also entitled to ask Defendant if he had a gun,

because police officers may lawfully question passengers during a traffic

stop, even when those questions do not relate to the purpose of the

traffic stop and are not supported by reasonable suspicion. <u>See</u> <u>United</u>

<u>States v. Muriel</u>, 418 F.3d 720, 726 (7th Cir. 2005). Because Officer

Burns had a reasonable, articulable suspicion that Defendant may have

been armed and dangerous, Officer Burns was entitled to conduct a pat-

down search of Defendant once Defendant exited the vehicle.  See
Johnson, 555 U.S. at 331-32 (stating that officers may perform a pat-
down of passengers in a vehicle upon reasonable suspicion that they may
be armed and dangerous).  Alternatively, once Defendant stated he had a
gun on his person, Officer Burns could lawfully arrest him based on
probable cause that Defendant was committing the crime of carrying a
concealed weapon and could search Defendant incident to the arrest.

The testimony in this case does not suggest that the officers' seizure
of Defendant was unreasonably long.  The officers' testimony indicates
that 17 minutes elapsed from the time that officers first saw White's car
to the time that officers entered the serial number on the seized firearm
into LEADS.  Within that 17-minute time span, officers (a) turned on
their vehicle's emergency lights to initiate a traffic stop on White's car
and followed White's car through a red light, (b) stopped White's vehicle
and approached the vehicle, (c) questioned Defendant, (d) ordered
Defendant to exit the vehicle, (e) removed the gun from Defendant's
waist band and arrested Defendant, and (f) returned to the patrol vehicle

to entered the serial number on the seized firearm into LEADS. At the evidentiary hearing, Officer Burns estimated that 5-10 minutes passed between the time Officers first saw White's vehicle at 9:01 p.m. and the time Officer Dodd removed the weapon from Defendant's person. Given these facts, this Court finds that the officers' seizure of Defendant was not unreasonably long. The officers' seizure of Defendant was lawful, and suppression of evidence is not warranted based on the timing of events.

C.    **The Report and Recommendation Does Not Include Inconsistencies or Errors that Warrant a Hearing De Novo.**

Finally, Defendant argues that certain "material inconsistencies and errors" in the Report and Recommendation warrant a hearing de novo. First, Defendant points out that page 4 of the Report and Recommendation states that "Officer Burns lifted Lyons' shirt and removed a handgun that was tucked in the waist band of Lyon's [sic] pants" but then later states that "Officer Dodd removed the gun from Lyons['] person." Def.'s Mot. at 11-12. Second, Defendant points out that page 8 of the Report and Recommendation states that Officer Burns'

reasonable, articulable suspicion that Defendant posed a threat to officer safety was justified on the basis "that a weapon was somewhere in the gun." Def.'s Mot. at 12. Defendant argues that this sentence is unsupported by the evidence, and its meaning is unclear. Defendant argues that "these errors, amongst others that are readily apparent to the naked eye, confound the findings and hamper their influence" such that a hearing <u>de</u> <u>novo</u> is warranted. Def.'s Mot. at 12. Defendant does not provide additional detail as to what other errors are "readily apparent."

This Court finds that the two errors that Defendant has specifically identified in his Objections are typographical errors that do not substantively affect the meaning of any of the findings of fact or legal conclusions in the Report and Recommendation. Defendant has not specifically alleged or explained how these errors could be construed to confuse the meaning of the Magistrate Judge's recommendations. Accordingly, Defendant's objections based on inconsistencies or errors in the Report and Recommendation are overruled.

<u>CONCLUSION</u>

IT IS THEREFORE ORDERED that the Magistrate Judge's Report and Recommendation (d/e 15) is ADOPTED and Defendant's Motion to Suppress (d/e 11) is DENIED. This case is REFERRED back to the Magistrate Judge for further pre-trial proceedings.

IT IS SO ORDERED.

ENTERED: February 28, 2012

FOR THE COURT:

_____s/ Sue E. Myerscough_____
SUE E. MYERSCOUGH
UNITED STATE DISTRICT JUDGE